## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

SOSSI KETCHEDJIAN,                                              Case No.:


     Plaintiff,

     v.

TD BANK, N.A., TRANS UNION, LLC,
EXPERIAN INFORMATION SOLUTIONS,
INC. and
EQUIFAX INFORMATION SERVICES, LLC,

     Defendants,

_____/

## COMPLAINT FOR DAMAGES
### JURY DEMAND

1.      Plaintiff, SOSSI KETCHEDJIAN ("Plaintiff," or "Mrs. Ketchedjian,") by and through the undersigned counsel hereby brings this action against Defendant TD BANK, N.A, ("TD Bank") for violations of Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* ("FCRA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.72 *et. seq.* ("FCCPA").

2.      Additionally, Plaintiff brings this action against Defendants TRANS UNION, LLC ("Trans Union"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") for violations of the FCRA and as grounds thereof would allege as follows:

### JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.      Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. §1367.

1

5.      Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

## PARTIES

6.      Plaintiff is a "consumer" as defined by Florida Statute §559.55(8).

7.      Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

8.      Defendant TD Bank is a Delaware corporation with a place of business at 1680 TD Bank Drive, McLean, Virginia 22102, with minimum contacts within the state of Florida by way of offering consumer credit cards to its customers, including Plaintiff. TD Bank maintains a registered agent in Florida on CORPORATION SERVICE COMPANY 1201 HAYS STREETTALLAHASSEE, FL 32301-2525.

9.      TD Bank uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to Consumer Reporting Agencies ("CRAs").

10.     These instrumentalities of interstate commerce are largely electronic or telephonic communications which have effects on consumers account balances and their credit files within the State of Florida.

11.     Defendant, Trans, Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the State of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

12.     Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware.  Experian is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

13.     Defendant, Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

14.     Trans Union, Experian, and Equifax shall collectively be referred to as the "Credit Reporting Agencies" or the "CRAs."

## STATUTORY FRAMEWORK

### The FCRA

15.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

16.     The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

17.     Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence

3

which is essential to the continued functioning of the banking system." *See* 15 U.S.C. §1681(a)(1).

18.     The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

19.     Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA.

20.     By enacting 15 U.S.C. § 1681c-2(a), Congress required CRAs to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

21.     The ability to obtain a "block" of information is especially important to consumers because once a block is in place, the account is permanently removed from the consumer's credit report and creditors are prohibited from sending the blocked account to collections. *See* 15 U.S.C. § 1681m(f).

22.     A CRA may decline to "block" information only if the CRA reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. *See* 15 U.S.C. § 1681c-2(c)(1).

23.     In the absence of such a determination of material misrepresentation or error, a CRA cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

24.     "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *See Osada v. Experian Info. Solutions, Inc*., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

25.     Furthermore, the FCRA requires a nationwide CRA that receives a consumer's dispute alleging identity theft, including a request to block, to notify the other CRAs of the complaint, and to maintain procedures for such referral. *See* 15 U.S.C. §1681s(f).

26.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." *See* Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

27.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

5

28.     "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the ID Theft disputes that it receives from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1302 (11th Cir. 2016).

29.     Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3), (4).

30.     The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." *See* 15 U.S.C.S. § 1681i(a)(1)(A).

31.     In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." *See* 15 U.S.C.S. § 1681i(a)(4).

32.     If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i) promptly delete that item of information from the file

of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." *See* 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

33.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. *See* 15 U.S.C. §§ 1681o, 1691n.

34.     If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. *See* 15 U.S.C. § 1681n(a).

35.     If the Violation is willful under § 1681n(a) the violator is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; such amount of punitive damages as the court may allow; and in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

36.     The FCRA provides that "[n]o person shall sell, transfer for consideration, **or place for collection a debt that such person has been notified under §1681c-2a** of this title has resulted from **identity theft**." *See* 15 U.S.C. §1681m(f)(1)[1] (emphasis added).

---

[1] 15 U.S.C. §1681m(8)(A) does not allow for civil liability for either negligent or willful noncompliance of the entire section.

**The FCCPA**

37.     The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc v. Unifund CCR Partners,* 601.F. 3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552)).

38.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. Fla. Stat. § 559.72. This language includes all unlawful attempts at collecting consumer debts by creditors and debt collectors alike. *See Williams v. Streeps Music Co.,*333 So. 2d 65, 67 (Fla. 4th DCA 1976).

39.     The FCCPA provides that no person shall "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." *See* Fla. Stat. § 559.72(5).

40.     The FCCPA further provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist." *See* Fla. Stat. § 559.72(9).

41.     "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." *See* Fla. Stat. §559.77(2).

## FACTUAL ALLEGATIONS COMMON TO FCRA CLAIMS

42.     Mrs. Ketchedjian is the victim of identity theft, which has led to certain fraudulent applications for credit being submitted in her name; in some cases, those applications have been granted.

43.     On November 14, 2022, Radius Global Solutions, LLC ("Radius") sent a letter to Mrs. Ketchedjian on behalf of TD Bank in an attempt to collect $12,411.66 for an account opened in her name; the letter appeared with the following image and information:

P.O. Box 390846
Minneapolis, MN 55439

SOSSI KETCHEDJIAN
FORT LAUDERDALE FL 33308-5907

Radius Global Solutions LLC
7831 Glenroy Road Suite 250-A
Minneapolis, MN 55439
833-254-0795
Office Hours (EST) 8am-8pm Mon-Thur 8am-5pm Friday
November 24, 2022
**Radius Reference Number: 005-F40152658**

**Radius Global Solutions is a debt collector.** We are trying to collect a debt that you owe to TD Bank, NA. We will use any information you give us to help collect the debt.

| Our information shows: | |
|---|---|
| You had a TD Bank, NA account with account number **************3999 | |
| As of 08/27/2019, you owed: | $12,411.66 |
| Between 08/27/2019 and today: | |
| You were charged this amount in interest: | + $0.00 |
| You were charged this amount in fees: | + $0.00 |
| You paid or were credited this amount toward the debt: | - $0.00 |
| **Total amount of the debt now:** | $12,411.66 |

**How can you dispute the debt?**

*   **Call or write to us by 01/07/23 to dispute all or part of the debt.** If you do not, we will assume that our information is correct.

*   **If you write to us by 01/07/23,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at ngicontact@radiusgs.com.

**What else can you do?**

*   **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by 01/07/23, we will stop collection until we send you that information. You may use the form below or write to us without the form. We accept such requests electronically at ngicontact@radiusgs.com

*   **Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.

*   Contact us about your payment options.

**To make online Payments visit:**
paymentportal.radiusgs.com

**Use Reference Number: 005-F40152658
Your PIN: 22886**

44.     Shortly after Mrs. Ketchedjian received the letter from Radius, she called to dispute the charge and informed Radius she never had an account with TD Bank, therefore she suspected her identity had been stolen.

45.     Radius suggested Mrs. Ketchedjian complete a police report if she believed her identity had been stolen and then submit it to Radius.

46.     After Mrs. Ketchedjian received the initial letter from Radius, TD Bank sent a monthly statement to her alleging she owed $12 411.66 ("Disputed Amount.").

47.     On December 2, 2022, the Fort Lauderdale Police Department contacted Mrs. Ketchedjian to document her claims of identity theft. The responding officer completed the identity theft report and issued an incident report number: 342212215723-1 ("Police Report.")

48.     After the Police Report was completed, Mrs. Ketchedjian provided it to Radius who responded by sending her a Debt Validation Letter on or about December 28, 2022. A copy of the Debt Validation Letter is attached hereto as part of Composite Exhibit "A."

49.     Mrs. Ketchedjian reviewed her available credit reports and saw the TD Bank account was being reported to all the CRAs with a charge off status.

50.     On or about April 20, 2023, Mrs. Ketchedjian sent a dispute letter identifying herself as a victim of identity theft with accompanying documentation to the CRAs and courtesy copied TD Bank ("First Dispute.")  A redacted copy of the First Dispute is attached hereto as Composite Exhibit "A."

51.     The supporting documentation in the First Dispute included the Police Report, an Identity Theft Affidavit, Mrs. Ketchedjian's driver's license, and the two letters she received from Radius. *See* Exhibit "A."

52.      On April 28, 2023, Trans Union denied Mrs. Ketchedjian's request to block the fraudulent information related to the TD Bank account.

53.      On April 28, 2023, Experian informed Mrs. Ketchedjian that her investigation results related to TD Bank were still pending.

54.      On May 6, 2023, Equifax denied Mrs. Ketchedjian's request to block the fraudulent information related to the TD Bank account. In the same communication Equifax claimed Plaintiff did not identify herself and asked for additional documentation when such information that was requested was already provided in the First Dispute. The Police Report shows Mrs. Ketchedjian provided the responding officer with two forms of identification: her social security card and driver's license with the corresponding numbers for each form of identification. *See* Exhibit "A."

55.      In response to the First Dispute, TD Bank verified the debt to all three CRAs who then provided their reinvestigation results to Mrs. Ketchedjian.

56.      All CRAs continued to report the TD Bank account despite receiving the dispute with supporting information that the account was the result of identity theft.

57.      On August 3, 2023, Mrs. Ketchedjian disputed the TD Bank Account again by sending a second set of dispute letters to the CRAs with a copy sent to TD Bank ("Second Dispute".) A redacted copy of the Second Dispute is attached hereto as Composite Exhibit "B."

58.      In the Second Dispute, Mrs. Ketchedjian referenced each CRAs refusal to block the disputed information because of her previous credit history and her habit of paying her recurring obligations on time. *See* Exhibit "B."

59.      Mrs. Ketchedjian had also recently applied for credit and was only approved for a $500 limit through Chase with an interest rate of over 20% APR.

11

60.    Unless and until the TD Bank account is blocked or deleted from Mrs. Ketchedjian's credit files with the CRAs, the fraudulent information regarding the account will continue to be viewed by third parties when she applies for credit. As a result, Mrs. Ketchedjian will continue to receive lower credit limits and higher interest rates when she is approved, or she will be denied credit.

### FACTUAL ALLEGATIONS COMMON TO FCCPA CLAIMS

61.    During the relevant time period, TD Bank sent Mrs. Ketchedjian multiple monthly statements in an attempt to collect a debt totaling $12,411.66 that she was disputing was the result of identity theft.

62.    In her dispute letters to the CRAs, Mrs. Ketchedjian notified TD Bank that the account opened in her name was the result of identity theft.

63.    On September 18, 2023, Mrs. Ketchedjian received a letter from a debt collector, Synergetic Communications, Inc. ("Synergetic Communications"), demanding payment on behalf of TD Bank for $12,411.66 which appeared with the following image and information:



Synergetic Communication Inc
8596 Wayne Drive, Suite A5
Hayden  ID 83635-5068
866-456-3526
Monday to Thursday 8am to 8pm CT,
Friday 8am to 5pm CT and Saturday 8am – 12pm CT
www.syncomcorp.net

Sossi Ketchedjian
Fort Lauderdale FL 33308

Reference: 17541712

September 18, 2023

**Synergetic Communication, Inc is a debt collector.** We are trying to collect a debt that you owe TD Bank N.A.. We will use any information you give us to help collect the debt.

**Our Information shows:**

You have an account with TD Bank N.A. with Account #
XXXXXXXXXXXX3999
Original Creditor: TD Bank N.A.

| | | |
|---|---|---|
| As of 08-27-19, you owed: | | $12,411.66 |
| Between 08-27-19 and today: | | |
| You were charged this amount in interest: | + | $ 0.00 |
| You were charged this amount in fees: | + | $ 0.00 |
| You paid or were credited this amount toward the debt: | – | $ 0.00 |
| **Total amount of the debt now:** | | **$12,411.66** |

**How can you dispute the debt?**

- Call or write to us by November 2, 2023, to dispute all or part of the debt. If you do not, we will assume that our information is correct.

- If you write to us by November 2, 2023, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at www.syncomcorp.net/company/contact_us.

**What else can you do**

- Write to ask for the name and address of the original creditor, if different from the current creditor. If you write by November 2, 2023, we must stop collection until we send you that information. You may use the form below or write to us without the form. We accept such requests electronically at www.syncomcorp.net/company/contact_us.

- Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law. For instance, you have the right to stop or limit how we contact you.

Our client has authorized us to offer you the following discount to resolve your account.

| | |
|---|---|
| Balance Due: | $12,411.66 |
| Discounted Payment Offer: | $4,344.08 |
| Payment Must Be Received By: | 11/02/2023 |

Should you have any questions regarding this, please call us at 866-456-3526.

Upon receipt and clearance of the discounted payment amount we will notify our client that the account has been resolved for less than the full balance. We are not obligated to renew this offer.

This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.

Sincerely,

Ken Walsh, Director Of Operations

64.   Accordingly, Mrs. Ketchedjian disputed the debt to Synergetic Communications within the time frame set forth in the September 18, 2023 letter.

65.   Despite putting TD Bank on notice multiple times that this account was the result of identity theft, TD Bank referred the account to Synergetic Communications for

13

purposes of collecting a debt without disclosing the fact that Mrs. Ketchedjian had previously disputed the debt.

<u>**COUNT I - VIOLATIONS OF 15 U.S.C. §1681s-2(b)**</u>
<u>**AGAINST TD BANK**</u>

66.     Plaintiff incorporates by reference the allegations in paragraphs 1, 3 – 10, 15 – 36, and 42 – 60 as if fully stated herein.

67.     TD Bank is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

68.     TD Bank violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's First and Second Disputes when it failed to review all relevant information regarding the alleged debt.

69.     Additionally, TD Bank violated §1681s-2(b) by failing to accurately respond to Plaintiff's disputes forwarded by the CRAs concerning the account TD Bank reported.

70.     As a result of TD Bank's violations of the FCRA, Plaintiff has suffered damages including but not limited to receiving unfavorable credit terms, mental pain and anguish, emotional distress, credit defamation, time spent dealing with credit report disputes, and the costs associated with his disputes.

71.     TD Bank's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

72.     In the alternative, TD Bank negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

73.     Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against TD Bank:

    a.   Adjudging that TD Bank has violated 15 U.S.C. §1681s-2(b);

    b.   Awarding Plaintiff actual damages;

    c.   statutory damages;

    d.   attorneys' fees, litigation expenses and costs;

    e.   and such other relief as the Court deems just and proper.

### COUNT II – VIOLATIONS OF FLA. STAT. §559.72(5) AGAINST TD BANK

74.    Plaintiff incorporates by reference the allegations in paragraphs 1, 3 – 10, 37 – 41, and 62 – 66.

75.    At all times relevant to this action, TD Bank is subject to and must abide by the law of State of Florida, including Florida Statute § 559.72.

76.    The FCCPA provides that no person shall "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." *See* Fla. Stat. § 559.72(5).

77.    TD Bank knew or had reason to know that the information it disclosed to Synergetic Communications regarding Plaintiff was false.

78.    Plaintiff had previously put TD Bank on notice about this false information in her communications with Radius and in her disputes submitted to the CRAs.

79.     However, TD Bank still referred the fraudulent account to Synergetic Communications for the purpose of collecting a debt.

80.     Additionally, The FCRA provides that "[n]o person shall sell, transfer for consideration, **or place for collection a debt that such person has been notified under §1681c-2a** of this title has resulted from **identity theft**." *See* 15 U.S.C. §1681m(f)(1) (emphasis added).

81.     "Any person who fails to comply with any provision of §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." *See* Fla. Stat. §559.77(2).

82.     As a result of TD Bank's FCCPA violations Plaintiff has suffered damages including but not limited to time spent addressing TD Bank's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation, and emotional distress related to claims that she owes amounts that were fraudulently obtained in her name.

83.     Damages in the form of reputation being affected are the "class of injury where damages are difficult to prove and at the same time provide a penalty to dissuade parties . . . from engaging in collection practices which may have been heretofore tolerated industry wide." *See Laughlin v. Household Bank*, 969 So. 2d 509, 513 (Fla. 1st DCA. 2007) (quoting *Harris v. Beneficial Finance Company of Jacksonville*, 338 So.2d 196, 200 (Fla. 1976)). Accordingly, Plaintiff "is not required to prove actual damages, but only a violation of one of

16

the prohibited practices in the FCCPA." Id.  "As discussed above, by enacting section 559.77, the Legislature intended to provide statutory damages in an area where the amount of damages are difficult to calculate." *Id.* at 514.

WHEREFORE, Plaintiff respectfully requests this Court to enter:

    a.   Injunctive relief preventing TD Bank from further violations of the FCCPA;

    b.   Actual, statutory, and punitive damages pursuant to Fla. Stat. § 559.77;

    c.   attorneys' fees, litigation expenses and costs of the instant suit; and

    d.   such other or further relief as the Court deems proper.

**<u>COUNT III – VIOLATIONS OF FLA. STAT. §559.72(6)</u>**
**<u>AGAINST TD BANK</u>**

84.    Plaintiff incorporates by reference the allegations in paragraphs 1, 3 – 10, 37 – 41, and 62 – 66.

85.    At all times relevant to this action, TD Bank is subject to and must abide by the law of State of Florida, including Florida Statute § 559.72.

86.    TD Bank violated Fla. Stat. §559.72(6) by disclosing information concerning the existence of a debt known to be reasonably disputed by the debtor without disclosing that fact.

87.    TD Bank disclosed to Synergetic Communications that Plaintiff owed $12,144.66, which Plaintiff reasonably disputed multiple times, but TD Bank failed to disclose that fact to Synergetic Communications.

88.    "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In

determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." *See* Fla. Stat. 559.77(2).

89.     Because of TD Bank's FCCPA violations Plaintiff suffered harm has suffered damages including but not limited to time spent addressing TD Bank's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation, and emotional distress related to claims that she owes amounts that were fraudulently obtained in her name.

WHEREFORE, Plaintiff respectfully requests this Court to enter:

a.   Injunctive relief preventing TD Bank from further violations of the FCCPA;

b.   Actual, statutory, and punitive damages pursuant to Fla. Stat. § 559.77;

c.   attorneys' fees, litigation expenses and costs of the instant suit; and

d.   such other or further relief as the Court deems proper.

## COUNT IV – VIOLATIONS OF FLA. STAT. §559.72(7) AGAINST TD BANK

90.     Plaintiff incorporates by reference the allegations in paragraphs 1, 3 – 10, 37 – 41, and 62 – 66 as if fully stated herein.

91.     At all times relevant to this action, TD Bank is subject to and must abide by the laws of State of Florida, including Fla. Stat. §559.72.

92.     TD Bank violated Florida Statute § 559.72(7) by "[w]illfully communicat[ing] with the debtor or any member of her or his family with such frequency as can reasonably be

expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."

93.     TD Bank has repeatedly tried to collect money from Mrs. Ketchedjian through direct communications, or indirectly through Synergetic Communications, despite being on notice that the debt in question is fraudulent. *See Braun v. TD Bank, No.* 8:20-cv-2951-VMC-TGW (M.D. Fla. Mar. 23, 2021).

94.     "Any person who fails to comply with any provision of § 559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with § 559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." *See* Fla. Stat. 559.77(2).

95.     Because of TD Bank's FCCPA violations, Plaintiff suffered damages, including but not limited to, time spent addressing TD Bank's illegal collection practices and emotional distress related to TD Bank's attempts to collect amounts that are due to fraud.

WHEREFORE, Plaintiff respectfully requests this Court to enter:

a.   Injunctive relief preventing TD Bank from further violations of the FCCPA;

b.   Actual, statutory, and punitive damages pursuant to Fla. Stat. § 559.77;

c.   attorneys' fees, litigation expenses and costs of the instant suit; and

d.   such other or further relief as the Court deems proper.

## COUNT V – VIOLATIONS OF FLA. STAT §559.72(9)
## AGAINST TD BANK

96.      Plaintiff incorporates by reference the allegations in paragraphs 1, 3 – 10, 37 –

41, and 62 – 66 as if fully stated herein.

97.      At all times relevant to this action, TD Bank is subject to and must abide by the

laws of State of Florida, including Fla. Stat. §559.72.

98.      TD Bank violated Fla. Stat. §559.72(9) by claiming, attempting, or threatening

to enforce a debt when TD Bank knew or should have known that the debt was not legitimate,

or asserting the existence of some other legal right when TD Bank knew that right did not exist.

99.      FCRA provides "[n]o person shall sell, transfer for consideration, o**r place for**

**collection a debt that such person has been notified under §1681c-2a** of this title has

resulted from **identity theft**." *See* 15 U.S.C. §1681m(f)(1) (emphasis added).

100.     Despite such a prohibition, TD Bank placed the account for collection with

Synergetic Communications.

101.     Subsequently, Plaintiff received the September 18, 2023 debt collection letter

from Synergetic Communications, on behalf of TD Bank to collect $12,411.66 from Plaintiff.

102.     "Communication" means the conveying of information regarding a debt directly

or indirectly to any person through any medium. Accordingly, TD Bank indirectly

communicated with Plaintiff to collect a debt despite being prohibited from doing so under the

FCRA.

103.     "Any person who fails to comply with any provision of §559.72 is liable for

actual damages and for additional statutory damages as the court may allow, but not exceeding

$1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In

determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." *See* Fla. Stat. 559.77(2).

104.    As a result of TD Bank's practices, Plaintiff has suffered damages including but not limited to time spent addressing TD Bank's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation for credit worthiness, and emotional distress.

WHEREFORE, Plaintiff respectfully requests this Court to enter:

    a.  Injunctive relief preventing TD Bank from further violations of the FCCPA;

    b.  Actual, statutory, and punitive damages pursuant to Fla. Stat. § 559.77;

    c.  attorneys' fees, litigation expenses and costs of the instant suit; and

    d.  such other or further relief as the Court deems proper.

## COUNT VI – VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST TRANS UNION

105.    Plaintiff incorporates by reference his allegations in paragraphs 2, 3, 5 - 7, 11, 15 – 36, and 42 – 60 as if fully set forth herein.

106.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

107.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

108.    During the relevant timeframe, Trans Union received Plaintiff's First and Second Disputes which requested a block of the TD Bank account.

109.     Plaintiff disputed the TD Bank account on her Trans Union credit report, identified herself, advised Trans Union of the fraudulent TD Bank account, furnished Trans Union with a copy of the Police Report, and requested that Trans Union block the fraudulent information.

110.     In response to her dispute, Trans Union continued to report the tradeline.

111.     Rather than block the fraudulent information or request specific additional information from Plaintiff, Trans Union negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

112.     Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

113.     Alternatively, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

114.     As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, , loss of the ability to purchase and benefit from credit, mental and emotional distress, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of:

   a.   Actual damages in an amount to be determined by the jury;

    b.   Punitive damages in an amount to be determined by the jury;

    c.   Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs;

    d.   Interest as permitted by law; and

    e.   Such other and further relief including as the Court deems equitable and just under the circumstances.

<u>**COUNT VII – VIOLATIONS OF 15 U.S.C. §1681i**</u>
<u>**AGAINST TRANS UNION**</u>

115.    Plaintiff incorporates by reference his allegations in paragraphs 2, 3, 5 - 7, 11, 15 – 36, and 42 - 60 as if fully set forth herein.

116.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

117.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

118.    During the relevant time frame, Trans Union received Plaintiff's First and Second Disputes regarding the accuracy or completeness of the TD Bank account appearing on Plaintiff's consumer disclosure.

119.    Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

120.    Trans Union unreasonably relied on information provided by TD Bank, when readily verifiable information that Plaintiff provided in the First and Second Disputes placed Trans Union on notice that TD Bank's information was inaccurate and unreliable.

121.     Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

122.     Alternatively, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

123.     As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, mental and emotional distress , time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of:

a.   Actual damages in an amount to be determined by the jury;

b.   Punitive damages in an amount to be determined by the jury;

c.   Statutory damages as determined by the Court;

d.   Attorneys' fees, litigation expenses and costs;

e.   Interest as permitted by law; and

f.   Such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT VIII – VIOLATIONS OF 15 U.S.C. §1681e(b)
### AGAINST TRANS UNION

124.     Plaintiff incorporates by reference his allegations in paragraphs 2, 3, 5 - 7, 11, 15 – 36, and 42 - 60 as if fully set forth herein.

125.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

126.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

127.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

128.    Any users of credit reports that viewed the TD Bank account saw the $12,411.66 in fraudulent charges after Plaintiff's First and Second Disputes.

129.    Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

130.    In the alternative, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

131.    As a result of Trans Union's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, mental and emotional distress, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of:

   a.   Actual damages in an amount to be determined by the jury;

   b.   Punitive damages in an amount to be determined by the jury;

   c.   Statutory damages as determined by the Court;

    d.   Attorneys' fees, litigation expenses and costs;

    e.   Interest as permitted by law; and

    f.   Such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT IX – VIOLATIONS OF 15 U.S.C. §1681c-2**
**AGAINST EXPERIAN**

132.    Plaintiff incorporates by reference her allegations in paragraphs 2, 3, 5 - 7, 12, 15 – 36, 42 – 58, and 65 - 67 as if fully set forth herein.

133.    At all times relevant hereto, Experian was and is a "consumer reporting agency" as defined by the FCRA.

134.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

135.    During the relevant time period, Experian received Plaintiff's First and Second Disputes which requested a block of the TD Bank account.

136.    Plaintiff disputed the TD Bank account on her Experian credit report, identified herself, advised Experian of the fraudulent TD Bank account, furnished Experian with a copy of the Police Report, and requested that Experian block the fraudulent information.

137.    Instead of blocking the information, Experian placed an extended fraud alert after it refused to block the TD Bank account.

138.    Rather than block the fraudulent information or request specific additional information from Plaintiff, Experian negligently and willfully disregarded its obligations under the FCRA by ignoring Plaintiff's request to block the fraudulent information.

26

139.     Alternatively, Experian failed to block the TD Bank account and violated the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

140.     Experian's acts and/or omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

141.     In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

142.     As a result of Experian's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, , loss of the ability to purchase and benefit from credit, mental and emotional distress, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian in the form of:

    a.   Actual damages in an amount to be determined by the jury;

    b.   Punitive damages in an amount to be determined by the jury;

    c.   Statutory damages as determined by the Court;

    d.   Attorneys' fees, litigation expenses and costs;

    e.   Interest as permitted by law; and

    f.   Such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT X – VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EXPERIAN

143.    Plaintiff incorporates by reference his allegations in paragraphs 2, 3, 5 - 7, 12, 15 – 36, and 42 – 60 as if fully set forth herein.

144.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

145.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

146.    During the relevant time frame, Experian received Plaintiff's First and Second Disputes regarding the accuracy or completeness of the TD Bank account appearing on Plaintiff's consumer disclosure.

147.    Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

148.    Experian unreasonably relied on information provided by TD Bank, when readily verifiable information that Plaintiff provided in the First and Second Disputes placed Experian on notice that TD Bank's information was inaccurate and unreliable.

149.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

150.    Alternatively, Experian negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

151.    As a result of Experian's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage

28

to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, mental and emotional distress, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian in the form of:

    a.   Actual damages in an amount to be determined by the jury;

    b.   Punitive damages in an amount to be determined by the jury;

    c.   Statutory damages as determined by the Court;

    d.   Attorneys' fees, litigation expenses and costs;

    e.   Interest as permitted by law; and

    f.   Such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT XI – VIOLATION OF 15 U.S.C. § 1681e(b) AGAINST EXPERIAN

152.    Plaintiff incorporates by reference his allegations in paragraphs 2, 3, 5 - 7, 12, 15 – 36, and 42 - 60 as if fully set forth herein.

153.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

154.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

155.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

156.     Any users of credit reports that viewed the TD Bank account saw the $12,411.66 in fraudulent charges after Plaintiff's First and Second Disputes.

157.     As a result of Experian's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, mental and emotional distress, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian in the form of:

a.   Actual damages in an amount to be determined by the jury;

b.   Punitive damages in an amount to be determined by the jury;

c.   Statutory damages as determined by the Court;

d.   Attorneys' fees, litigation expenses and costs;

e.   Interest as permitted by law; and

f.   Such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT XII – VIOLATION OF 15 U.S.C. 1681c-2 AGAINST EQUIFAX**

158.     Plaintiff incorporates by reference his allegations in paragraphs 2, 3, 5 – 7, 13, 15 – 36, and 42 – 60 as if fully set forth herein.

159.     At all times relevant hereto, Equifax was and is a was and is a "consumer reporting agency" as defined by the FCRA.

160.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

161.    During the relevant time frame Equifax received Plaintiff's First and Second Disputes which requested a block of the TD Bank account.

162.    Plaintiff disputed the TD Bank account on her Equifax credit report, identified herself, advised Equifax of the fraudulent related to the TD Bank account, furnished Equifax with a copy of the Police Report, and requested that Equifax block the fraudulent information.

163.    Instead of blocking the information, Equifax placed an extended fraud alert on Plaintiff's Equifax credit file.

164.    Rather than block the fraudulent information or request specific additional information from Plaintiff, Equifax negligently and willfully disregarded its obligations under the FCRA by ignoring Plaintiff's request to block the fraudulent information.

165.    Alternatively, Equifax failed to block the TD Bank account and violated the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

166.    Equifax's acts and/or omissions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

167.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. § 1681o.

168.    As a result of Equifax's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to

purchase and benefit from credit, mental and emotional distress, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax in the form of:

     a.   Actual damages in an amount to be determined by the jury;

     b.   Punitive damages in an amount to be determined by the jury;

     c.   Statutory damages as determined by the Court;

     d.   Attorneys' fees, litigation expenses and costs;

     e.   Interest as permitted by law; and

     f.   Such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XIII – VIOLATION OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

169. Plaintiff incorporates by reference his allegations in paragraphs 2, 3, 5 – 7, 13, 15 – 36, and 42 – 60 as if fully set forth herein.

170. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

171. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

172. During the relevant time frame, Equifax received Plaintiff's First and Second Disputes regarding the accuracy or completeness of the TD Bank account appearing on Plaintiff's consumer disclosure.

173.    Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

174.    Equifax unreasonably relied on information provided by TD Bank, when readily verifiable information that Plaintiff provided in the First and Second Disputes placed Equifax on notice that TD Bank's information was inaccurate and unreliable.

175.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

176.    Alternatively, Equifax negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

177.    As a result of Equifax's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, mental and emotional distress, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax in the form of:

      a.   Actual damages in an amount to be determined by the jury;

      b.   Punitive damages in an amount to be determined by the jury;

      c.   Statutory damages as determined by the Court;

      d.   Attorneys' fees, litigation expenses and costs;

      e.   Interest as permitted by law; and

f.  Such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XIV – VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EQUIFAX

178.   Plaintiff incorporates by reference her allegations in paragraphs 2, 3, 5 – 7, 13, 15 – 36, and 42 – 60 as if fully set forth herein.

179.   At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

180.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

181.   Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

182.   Any users of credit reports that viewed the TD Bank account saw the $12,411.66 in fraudulent charges after Plaintiff's First and Second Disputes.

183.   As a result of Equifax's failure to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, damage to her reputation for credit worthiness, receiving unfavorable credit terms, loss of the ability to purchase and benefit from credit, mental and emotional distress, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax in the form of:

a.  Actual damages in an amount to be determined by the jury;

b.   Punitive damages in an amount to be determined by the jury;

c.   Statutory damages as determined by the Court;

d.   Attorneys' fees, litigation expenses and costs;

e.   Interest as permitted by law; and

f.   Such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

184.   Plaintiff demands a trial by jury on all issues so triable.

Dated: October 9, 2023                              Respectfully submitted,

**SHARMIN & SHARMIN, P.A.**

**_/s/ Kevin Rajabalee_____**
Kevin Rajabalee, Esq.
Fla. Bar. No. 119948
Eiman Sharmin, Esq.
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Direct: 561-296-9109
Fax: (844) 921-1022
Primary email: kevin@sharminlaw.com
Email: eiman@sharminlaw.com
   _Attorneys for Plaintiff_